UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:22-cv-81004-AMC

STEPHEN MUCCIO, individually and
on behalf of all others similarly situated,

    Plaintiff,

vs.

GLOBAL MOTIVATION, INC., and
JORDAN R. BELFORT,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants Global Motivation, Inc. ("**Global**") and Jordan R. Belfort ("**Mr. Belfort**") (collectively, "**Defendants**") move to dismiss the putative Class Action Complaint (ECF No. 1; "**Complaint**") filed by Plaintiff Stephen Muccio.  Plaintiff's Complaint fails to state a valid claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "**TCPA**") and its concomitant regulations, and the Florida Telephone Solicitation Act, Section 501.059, Florida Statutes (the "**FTSA**").  Also, not only does Plaintiff lack standing under well-settled Eleventh Circuit precedent, but he fails to plead the requisite elements of his claims, and does not plead sufficient facts to state any claims against Mr. Belfort.  Accordingly, the Complaint should be dismissed.

**I.**    **INTRODUCTION**

Plaintiff asserts five causes of action for alleged violations of the FTSA and TCPA.  All five causes of action lack merit and are subject to dismissal for a number of reasons.

<u>First</u>, Plaintiff lacks standing.  In accordance with *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) and its progeny, Plaintiff has failed to clear the qualitative floor necessary to establish

1

66947227;3

that he suffered cognizable harm associated with his alleged receipt of two text messages. He therefore lacks Article III standing. All claims are therefore subject to dismissal.

Second, with respect to Counts II and III (asserting that Defendants violated the TCPA for failing to maintain internal do-not-call ("**IDNC**") policies and procedures), Plaintiff lacks standing and/or fails to state valid claims because he does not (and cannot) allege that (i) he ever requested to be placed on any IDNC list; or (ii) he was contacted subsequent to making such a request. He has thus not suffered any harm associated with Defendants' alleged failure to maintain an IDNC policy or list, nor are the alleged harms identified in the Complaint fairly traceable to such failure.

Third, Counts III and IV purport to be "causes of action" for "injunctive relief." No such cause of action is recognized under Florida law. It is black letter law that injunctive relief is a remedy, not a cause of action. For that reason alone, Counts III and IV must be dismissed.

Fourth, Count V (which alleges that Defendant violated 47 C.F.R. § 64.1200(d)(4) for failing to identify itself in the subject text messages) fails because there is no private cause of action for such an alleged violation. The sued-upon regulation was proscribed by the Federal Communications Commission ("**FCC**") in accordance with rulemaking authority conferred upon it by 47 U.S.C. § 227(*d*), which does not provide a private cause of action. As a result, Plaintiff's "failure to identify" claim must be dismissed.

Fifth, Plaintiff seeks to trade on the fame of Mr. Belfort by naming him individually in this lawsuit, but fails to allege sufficient facts demonstrating individual liability. The claims against Mr. Belfort must be dismissed as a result.

II. **LEGAL STANDARD**

To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotations omitted). A claim should only be considered facially plausible when "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To satisfy the plausibility standard, Plaintiff must set forth "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While a plaintiff is not obligated to plead factual allegations in great detail, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must "include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Finally, Plaintiff's allegations must be well-founded, as a recitation of "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012).

### III. ARGUMENT

#### A. Plaintiff Lacks Standing

In order to establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). As relevant here, in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), the Court held that the receipt of a single text message does not amount to an injury in fact for purposes of establishing Article III standing. *Id.* at 1172 (holding that "receiving a single text message . . . is not a basis" to establish standing). In fact, Courts in this District have held that the receipt of up to five text messages is insufficient to confer standing. *See Eldridge v. Pet Supermarket, Inc.*, Case No. 18-cv-22531, 2020 WL 1475094, at *8 (S.D. Fla. March 10, 2020) (Williams, J.) (dismissing five text message TCPA case as insufficient to confer standing).

Indeed, *Salcedo's* holding does not establish that the receipt of more than one text message is sufficient to confer standing. To the contrary, *Salcedo* noted the qualitative difference between alleging that a text message caused a plaintiff to waste time, or left his phone unavailable for other pursuits, or resulted in an invasion of privacy or right to enjoy the utility of the cellular device, on the one hand, and the allegations that a single fax leaves a machine unavailable to receive legitimate business messages for the duration of the full minute required to process the unwanted fax, or the tangible costs associated with consumption of paper, ink, or toner. *Id.* at 1168. *Salcedo* stressed that the standing analysis focuses on the *qualitative* nature of the injury, not the *quantitative* amount of messages received. *Id.* at 1169. Allegations of harm beyond nuisance, annoyance, or feigned invasion of privacy is required to confer standing in this Circuit for allegations concerning receipt of text messages. *Ibid.*

Plaintiff has not pled sufficient harm. Instead, Plaintiff alleges that the text messages at issue here caused him harm in the form of "invasion of privacy, aggravation and annoyance." *See* Compl., ¶ 51. This is significant because, in finding no concrete harm for the receipt of the text messages in *Salcedo*, the Eleventh Circuit analyzed whether these *same exact types* of intangible harms bore "a close relationship to a harm that has traditionally been regarded as providing a basis for [standing]." *Salcedo*, 936 F.3d at 1170-71 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (U.S. 2016)). The Eleventh Circuit concluded they did not.

Here, Plaintiff's "harm" is indistinguishable from *Salcedo*. The receipt of two text messages is an "isolated, momentary, and ephemeral" event that does not confer Article III standing. *Salcedo*, 936 F.3d at 1171. Plaintiff in *Salcedo* and Plaintiff here both alleged that the text messages invaded their privacy and annoyed them. *See* Compl., at ¶ 51; *Salcedo*, 936 F.3d at 1167 and 1172. Neither plaintiff alleged (or could have alleged) that the text message cost them

any money or actual damages. *Id.* at 1168. Neither plaintiff alleged any "objectively intense interference" with his private space, infringement of real property rights, or the defendant's exercise of complete dominion over his cell phone, even for a limited time. *Id.,* at 1171-72; *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 921 (11th Cir. 2020) (holding that "a party does not have standing to sue when it pleads only the bare violation of a statute"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197, 210 L. Ed. 2d 568 (2021) (holding that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

Judge Scola recently re-affirmed this principle in *Frater v. Lend Smart Mortgage, LLC*, 2022 WL 4483753 (S.D. Fla. Sept. 27, 2022) (Scola, J.). There, the Court dismissed plaintiff's complaint for lack of subject matter jurisdiction owing to a lack of standing because the plaintiff could not "identify a single specific harm she allegedly suffered, beyond offering a conclusory recitation of harms like 'annoyance,' 'aggravation,' and 'wasted time.'" Judge Scola held that such a failure "mean[t] that she has [] failed to clear the qualitative floor for a concrete injury . . . to bring claims under FTSA." *Id.* at *4 (citing *Salcedo*, 936 F.3d at 1172-73.

The alleged harms deemed insufficient to confer standing in *Frater* and *Salcedo* are the exact harms Plaintiff has alleged here. Plaintiff's Complaint (all Counts) should be thus dismissed.

### B. Plaintiff's IDNC Claims (Counts II and III) Fail as a Matter of Law

To establish the second requirement of Article III standing, a plaintiff must claim injury that is "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560. Plaintiff alleges that Defendants violated 47 C.F.R § 64.1200(d) by failing to (i) maintain the policies and procedures, (ii) provide training to its personnel engaged in telemarketing, and (iii) maintain a standalone do not call list. *See* Compl., ¶ 74. Plaintiff cannot allege an IDNC violation because

5

he never requested that the text messages cease. This is the death knell of his IDNC claims, requiring that Counts II and III be dismissed with prejudice as a matter of law.

Plaintiff simply does not allege in his Complaint that he ever requested to be placed on Defendants' IDNC list, or that he asked for the texts to stop. Consequently, in addition to having not suffered any cognizable harm associated with Defendants' alleged failure to maintain an IDNC, Plaintiff likewise does not (and cannot) allege that his receipt of the subject messages bears *any* causal relationship to Defendants' alleged failure to maintain an IDNC, or policies and procedures related to same.

This precise issue was previously addressed by the Eleventh Circuit in *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019). There, the Court noted that there is "no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who never said . . . they didn't want to be called again." *Id.*

That is exactly the case here. Plaintiff did not submit a do-not-call request to Defendants, nor does he allege that he was contacted subsequent to such a request. The only harm that could plausibly result from a seller's failure to maintain an IDNC list in violation of 47 C.F.R § 64.1200(d) is that a plaintiff received additional calls after requesting placement on that IDNC list. *See* 47 C.F.R § 64.1200(d)(3). But that did not happen here. Put simply, if a person never requests to be placed on a seller's IDNC list or never receives calls after making such a request, s/he cannot suffer any injury fairly traceable to an alleged failure to maintain an IDNC list. *Cordoba*, 942 F.3d at 1272; *see also Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1333 (S.D. Fla. 2021) (Gayles, J.) (holding that there is no viable claim under Article III unless and until the consumer/plaintiff asks for calls/texts to stop); *Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506, at *2 (E.D. Pa. Apr. 13, 2021) (dismissing IDNC claim and

holding that said "provision applies only to individuals who have directed a company not to call them… Even if one or more Defendants had maintained an internal do-not-call list, that compliance would not have prevented them from calling Mr. Perrong" because he did not request the calls to stop).

Plaintiff thus lacks standing to assert, and/or has failed to adequately plead, his IDNC claims, and they must be dismissed accordingly.

C. **Counts III and IV Are Not Proper Causes of Action**

Counts III and IV purport to be standalone causes of action for "Injunctive Relief." *See* Compl., at 15-17. Such causes of action are not proper. "Injunctive relief, generally speaking, is a remedy, not a cause of action." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1098 (11th Cir. 2004) ("[A] traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed"); *Maus v. Ennis*, 2012 WL 1252677, at *8 (M.D. Fla. Mar. 16, 2012), *report and rec adopted*, 2012 WL 1252669 (M.D. Fla. Apr. 13, 2012), *aff'd*, 513 F. App'x 872 (11th Cir. 2013); *Pierson v. Orlando Regional Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009) ("an injunction is not a cause of action but a remedy"); *Brevard Cty., Fla. v. Priceline.com, Inc.*, 2010 WL 680771, at *5 (M.D. Fla. Feb. 24, 2010) (dismissing "injunction" claim with prejudice, because "an injunction is fundamentally not a claim showing that the pleader is entitled to relief… an injunction is a remedy").

Because a standalone "injunction" cause of action is not proper, Counts III and IV should be dismissed for failure to state a claim.

D. **Plaintiff Has Failed to Sufficiently Plead a Cause of Action in Count I**

Count I should be dismissed for failure to state a cause of action. Plaintiff asserts that Defendants violated Section 501.059(8)(a), Florida Statutes, by sending him text messages using

"an automated system for the selection or dialing of telephone numbers." *See* Compl., ¶ 68. The allegations pertaining to the alleged use of an "automated system" merely parrot the statutory language and provide no detail *whatsoever* about Defendants' actual conduct or the system used.

It is axiomatic that a complaint that "contain[s] a mechanical recitation of the elements of the cause of action, and, in particular, only conclusory allegations. . . is insufficient to withstand a motion to dismiss." *Est. of Cox by & through Smith v. Marcus & Millichap, Inc.*, No. 8:18-CV-381-WFJ-AAS, 2022 WL 1465333, at *5 (M.D. Fla. Jan. 24, 2022), *report and recommendation adopted*, No. 8:18-CV-381-T-02AAS, 2022 WL 1448611 (M.D. Fla. May 9, 2022); *Twombly*, 550 U.S. at 555; *Lugassy v. Bank or Am., N.A.*, No. 19-CV-61765, 2020 WL 9460216, at *4 (S.D. Fla. Mar. 6, 2020), *report and recommendation adopted sub nom. Lugassy v. Bank of Am., N.A.,* No. 19-61765-CIV, 2020 WL 9460217 (S.D. Fla. Mar. 23, 2020) (dismissing TCPA claim agreeing that the plaintiff's complaint was "devoid of any factual content"); *Cooper v. City of Starke, Fla.,* No. 3:10-CV-280-J-34MCR, 2011 WL 1100142, at *8 (M.D. Fla. Mar. 23, 2011) (dismissing claim because plaintiff's "general allegation" of a statutory violation was "insufficient to satisfy the standards of *Twombly* and *Iqbal*"); *Cunningham v. Chiorzi*, No. 3:20-CV-386-SI, 2020 WL 3104508, at *2 (D. Or. June 11, 2020) (dismissing TCPA claim because "[t]he Complaint [was based only on] threadbare factual allegations [which] amount to a mere recitation of the elements of a TCPA claim").

Plaintiff states no facts in support of his conclusory assertion that Defendants used an "automated system for the selection or dialing of telephone numbers." The only allegations regarding the use of an "automated system" are the virtually *identical* allegations made in *every single class TCPA and FTSA case filed by Plaintiff's counsel*. Here, there are no specific details related to Defendants, any "system" (automated or not) that was allegedly used, or the alleged

66947227;3

procedures for sending text messages. The facts of each case are different. Causes of action are creatures of fact-specific inquiries. Not all "systems," automated or not, are equal. The Court should not infer the use of an "automated system," as it is improper to assume "a [plaintiff] can prove facts that [he or she] has not alleged..." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Based on these time-honored principles, the Court in *Davis v. Coast Dental Services, LLC*, Case No. 8:22-cv-941-KKM-TGW, 2022 WL 4217141 (M.D. Fla. Sept. 13, 2022) recently dismissed a similarly pled "automated system" claim. Confronted with similar complaint allegations, bare and devoid of any *real* facts, the Court dismissed the complaint and stated:

> Davis fails to allege sufficient facts to plead a plausible violation of the FTSA as a matter of law… The fact that Coast Dental sent Davis an unsolicited text message is consistent with the idea that Coast Dental used an automated machine to send advertisements en masse. However, these facts are also consistent with Coast Dental hiring a marketing firm to send individual messages from a personal cell phone in full compliance with the FTSA. From the facts pleaded, it is merely possible that Coast Dental violated the FTSA, but not plausible as the pleading standard requires. *See Iqbal*, 556 U.S. at 679. Without more, Davis's FTSA claim fails.

*Davis,* 2022 WL 4217141, at *2.

The Court should reach the same result here. Accordingly, Count I should be dismissed for failure to state a claim.

E.    **Plaintiff Did Not Receive Any Text Messages on a Residential Phone Line**

Counts II, III, and V of the Complaint each rely on 47 U.S.C. § 227(c) to state a claim. Each such count must be dismissed because the regulation that Plaintiff claims has been violated, 47 C.F.R § 64.1200(d), expressly limits its scope to calls placed to "residential telephone subscribers." However, the Complaint is bereft of any allegation that Plaintiff's cellphone is a residential telephone number. To the contrary, Plaintiff only asserts that, "[a]t the time Plaintiff

9

received the text messages, he was the subscriber and sole user of the cellular telephone that received the text messages." *See* Compl., at ¶ 27. There is no allegation that the number at issue is Plaintiff's "residential telephone" number.

The distinction between a residential telephone and a business telephone is one with a difference for purposes of 47 U.S.C. § 227(c), as dismissal is proper where claims are brought pursuant to 47 U.S.C. § 227(c) for calls to cellphones that are not a "residential telephone[s]." *See e.g. Cunningham v. Creative Edge Mktg. LLC,* No. 419CV00669ALMCAN, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021) (ruling that "Plaintiff has not provided a sufficient basis to proceed on his claim under § 227(c)(5) of the TCPA and 47 C.F.R. § 64.1200(d)" which applies "to a residential telephone subscriber" and "does not encompass plaintiff's cell phone"), *report and recommendation adopted*, No. 4:19-CV-669, 2021 WL 3048400 (E.D. Tex. July 20, 2021); *Cunningham v. Spectrum Tax Relief, LLC*, No. 3:16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017) (ruling, based on the "plain language" of the TCPA regulation, that plaintiff cannot state a claim because "[t]he private right of action created by 47 U.S.C. § 227(c)(5) is . . . limited to redress for violations of the regulations that concern residential telephone subscribers," and plaintiff alleges only calls to his cell phone), *report and recommendation adopted*, 2017 WL 3220411, at *1 (July 28, 2018).

Because Plaintiff has not pled that his alleged receipt of the subject text messages occurred on a residential telephone, Counts II, III and IV (which are brought pursuant to 47 U.S.C. § 227(c)) should be dismissed.

    F.    <u>There is No Private Right of Action Under 47 C.F.R. § 64.1200(d)(4)</u>

The Supreme Court has confirmed that Congress must create "private rights of action, explicit or implicit, to enforce federal laws." *Alexander v. Sandoval*, 532 U.S. 275, 286-87

(2001).  If Congress does not create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.*  As relevant here, Congress did not explicitly or implicitly create a private right of action for regulations promulgated under 47 U.S.C. § 227(d).

In Count V, Plaintiff attempts to assert a cause of action under 47 C.F.R. § 64.1200(d)(4), which provides, in pertinent part, that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller."  While 47 U.S.C. § 227(c)(5) affords a private right of action for alleged violations of the regulations enacted by the FCC pursuant to the rulemaking authority enumerated to it by 227(c)(1)(E), this specific provision of the Code of Federal Regulations (§ 64.1200(d)(4)) was not proscribed by the FCC in accordance with authority conferred on it by 47 U.S.C. § 227(***c***).  Rather, it was proscribed pursuant to rulemaking authority conferred by Congress to the FCC by 47 U.S.C. § 227(***d***).  There is no private right of action under § 227(***d***).  The FCC's published rules make this clear.  In its initial 1992 rulemaking implementing the statute, the FCC stated as follows:

> The TCPA mandates that all artificial or prerecorded telephone messages delivered by an autodialer state clearly the identity of the caller at the beginning of the message and the caller's telephone number or address during or after the message, § 227(d)(3)(A), *and we adopt this requirement in our rules*, *64.1200(d)*.

*See* 7 FCC Rcd. 8752, 8779 para. 53 (1992) (emphasis added).

This was proceeded by a Notice of Proposed Rulemaking that the FCC issued on April 10, 1992, in which it stated that "all auto-dialer systems must state clearly at the beginning of the message the identity of the caller including a telephone number or address," as required by Section 227(d) of the TCPA.  7 FCC Rcd. 2736, 2739 para. 21 (1992).  This clarifies that not only were the TCPA's "identification requirements" intended to be applicable only to artificial or

prerecorded messages (which are distinctly different from the text messages at issue), but also that the FCC unambiguously understood that its authority to promulgate rules obligating sellers to comply with identification requirements derived from 47 U.S.C. § 227(*d*). This, of course, makes sense when viewing the statute itself, given that 47 U.S.C. § 227(d)(3) explicitly confers a rulemaking obligation on the FCC to implement standards which mandate that artificial or prerecorded messages clearly state the identity of the business.

For this reason, a myriad courts have routinely dismissed cases purporting to claim violations of 47 C.F.R. § 64.1200(d)(4), finding that no private right of action exists for the claims. *See e.g., Braver v. NorthStar Alarm Serv., LLC*, 2019 WL 3208651, at *14-15 (W.D. Okla. July 16, 2019) (granting summary judgment as 47 C.F.R. § 64.1200(d)(4) "was ...promulgated under § 227(d), a subsection of the TCPA which does not provide a private cause of action," and not under § 227(c)); *Wilson v. PH Phase One Operations L.P.*, 422 F. Supp. 3d 971, 981-982 (D. Md. 2019) (dismissing 227(c) claim under subsection 64.1200(d) as regulation was promulgated under section 227(d) of the TCPA); *Burdge v. Ass'n Health Care Mgmt. Inc.*, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (dismissing "internal do not call claim" and holding that the regulations set forth in 47 C.F.R. § 64.1200(d)(4) "are technical and procedural in nature and were promulgated pursuant to [S]ection 227(d) of the TCPA" for which there is no private cause of action).[1]

---

[1] *See also Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013) (holding that Section 227(d) "does not contain a similar private right of action, unlike other subsections" of the TCPA); *Hurley v. Wayne Cty. Bd. of Educ.*, No. 16-cv-9949, 2017 WL 2454325, at *4 (S.D. W. Va. June 6, 2017) ("Congress did not intend private parties to enforce either Section 227(d) or the regulations prescribed pursuant to that section."); *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (stating that "The Court agrees with Defendant… [that]… none of the available TCPA private rights of action permit a recovery for violating those regulations [contained in 47 C.F.R. § 64.1200(d)]").

66947227;3

Defendants acknowledge that some courts have held that a private right of action does exist for alleged violation 47 C.F.R. § 64.1200(d)(4), deeming the regulation to have been enacted pursuant to rulemaking authority conferred by 47 U.S.C § 227(c). However, Defendants respectfully submit that those determinations have resulted either from flawed analysis or the substitution of policy concerns for statutory interpretation.

For example, in *Robinson v. 7PN, LLC*, 569 F.Supp.3d 1175 (D. Utah. 2021), the court found that Section 64.1200(d)(4) violations are actionable through Section 227(c)'s private right of action notwithstanding (and correctly noting) that (i) the original version of Section 64.1200(d) is nearly identical to the original version of 47 U.S.C. § 227(d) and (ii) that the current version of Section 64.1200(d) stems from the original version of Section 64.1200(e). *Id.* at 1183-84. The Court subsequently overlooked or disregarded these facts to conclude that the "the purpose of Section 227(c) – protecting individual privacy rights – more closely corresponds to Section 64.1200(d)." *Id.* at 1184. This is incorrect for at least two separate reasons, though. *First*, the protection of privacy rights is not confined to Section 227(c) of the TCPA, as "privacy rights" are also specifically referenced in the rulemaking authority that Congress delegated to the FCC through Section 227(b). *See* 47 U.S.C. 227(b)(2)(B)(ii))(I) and (b)(2)(C). *Second*, Section 64.1200(e), which the *Robinson* court observed as being the predecessor to current Section 64.1200(d)(4), originally included a subsection (iv) entitled "Identification of telephone solicitor" and provided as follows:

> (iv) Identification of telephone solicitor. A person or entity making a telephone solicitation must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. If a person or entity makes a solicitation using an artificial or prerecorded voice message transmitted by an autodialer, the person or entity must provide a

> telephone number other than that of the autodialer or prerecorded message player which placed the call.

7 FCC Rcd. 8752, 8792.

The comparison to current Section 64.1200(d)(4) proves the accuracy of the *Robinson* court's observation of the linkage between the two:

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d)(4).

The first clause of each of the foregoing regulations contain identical language concerning identification requirements, lending credence to the conclusion that original Section 64.1200(e)(4) is the predecessor to current Section 64.1200(d)(4). Importantly, original Section 64.1200(e)(4) was specifically referenced in the paragraph 53 of the FCC's discussion of the original 1992 TCPA rulemaking. Notably, that paragraph specifically invokes § 227(d)(3) on two separate occasions and does not reference § 227(c) at all. It is apparent that the FCC understood that the authority to implement the identification requirements of original Section 64.1200(d) and original Section 64.1200(e)(4) derived from § 227(d)(3).[2]

---

[2]  Plaintiff may also attempt to point to decisions such as *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011) and *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-200, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016), which have found that 47 C.F.R. § 64.1200(d) was promulgated under 47 U.S.C. § 227(c). Those courts, however, did not take note of the fact that the regulations expressly identify Section 64.1200(d) as "procedures," nor of the express language of the TCPA itself, which identifies 47 U.S.C. § 227(d) as providing the statute's "technical and procedural standards." *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885, at *8 (M.D. Fla. Mar. 15, 2018); *Cunningham v. Creative Edge Mktg. LLC*, No. 19-cv-00669-ALM-CAN, 2021 WL 3085415, at *5 (E.D. Tex. June 16, 2021), *report and*

Section 227(d) of the TCPA does not afford individuals a private right of action. Plaintiff's attempt to cloak his TCPA claim as a cause of action under 47 U.S.C. § 227(c), despite that it is the prototypical "technical and procedural" claim under 47 U.S.C. § 227(d), for which no private right of action exists, warrants dismissal. Plaintiff's claim for violation of 47 C.F.R. § 64.1200(d)(4) should be dismissed accordingly.

### G.     Plaintiff's Claims Against Jordan R. Belfort, Individually, Are Improper

While the causes of action in the Complaint themselves do not expressly state whether they are against Global or Mr. Belfort, it appears that *all* of Plaintiff's claims are against both Defendants. The claims against Mr. Belfort individually must be dismissed, as Plaintiff has not pled any non-conclusory facts to support an inference that he may be held liable for the alleged violations arising from the alleged conduct undertaken by the corporate defendant – Global.

In order to plead individual liability, Plaintiff must allege that Belfort himself sent the text messages at issue or had sufficient control over the party that did. *See, e.g., Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015); *Hirsch v. Lyndon S. Ins. Co.*, 2019 WL 5110622, at *4-6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.*, 2019 WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020).

Plaintiff's allegations are purposefully pled only "[o]n information and belief." *See* Compl., ¶¶18-24. This is little different than claiming that Tim Cook may be held responsible for Apple's alleged TCPA violations, Jeff Bezos for Amazon's, or Mark Zuckerberg's for Facebook's.

---

*recommendation adopted*, 2021 WL 3085399 (E.D. Tex. July 20, 2021) (stating that "§ 227(d) governs "technical and procedural standards"). Accordingly, Courts have rejected *Charvat* and *Drew*, instead holding that Section 64.1200(d) falls within the purview of 47 U.S.C. § 227(d) and does not provide a right of action. *See, e.g., Braver*, 2019 WL 3208651, at *15 (finding that *Charvat* was decided "without analysis").

In fact, the Complaint concedes that that "[t]he precise details of Belfort's involvement are solely within the possession of Defendants." *Id.* ¶ 24.

Plaintiff's allegations against Belfort are conclusory and based on little more than a desire to plead a famous individual into the Complaint. Plaintiff has asserted no facts to establish individual liability against Mr. Belfort and he should be dismissed entirely from this action. *See Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2-3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (dismissing individual TCPA claims because "[p]laintiff did not sufficiently allege that Defendant placed or directed to be placed the Prerecorded Call" and failed to state a plausible claim for vicarious liability "because Plaintiff failed to establish a principal-agent relationship and failed to show that Defendant had any knowledge of the material facts surrounding the Prerecorded Call"); *Rucker v. Nat'l Auto. Fin. Servs. LLC*, No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021) (dismissing TCPA claims against individual corporate officer/owner where complaint only alleged "general allegations" which the court found was insufficient); *Bank v. Simple Health Plans, LLC*, 2019 WL 7878570, at *7 (E.D.N.Y. Dec. 12, 2019) (stating that "[c]ourts have consistently found that conclusory allegations that corporate officers personally participated in violations of the TCPA are insufficient to state a claim"); *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) (finding allegations that individual defendants personally "authorized," "oversaw," and "directed" violations at issue were not enough to sustain a claim for personal liability under the TCPA).

Surely, the bare "upon information and belief" allegations here that Mr. Belfort "personally reviewed and/or authorized" the messages as the CEO of Global, had the "final say on the content"

of the messages, and "authorized the transmission" are equally insufficient. The Court should therefore dismiss Mr. Belfort from this lawsuit.

## IV. CONCLUSION

Defendants respectfully request that the Court grant this motion, dismiss the complaint with prejudice, award Defendants fees and costs to the fullest extent permitted by law, and grant Defendants such further and additional relief as the Court deems just and proper.

Dated: October 21, 2022

**AKERMAN LLP**

*/s/ Jeffrey B. Pertnoy*
Jeffrey B. Pertnoy, Esq. (FBN 91939)
Jeffrey.pertnoy@akerman.com
Lawrence P. Rochefort, Esq. (FBN 769053)
Lawrence.rochefort@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095

- and -

**KLEIN MOYNIHAN TURCO LLP**

*/s/ Neil E. Asnen*
Neil E. Asnen, Esq. (*Admitted Pro Hac Vice*)
nasnen@kleinmoynihan.com
450 Seventh Avenue – 40th Floor
New York, NY 10123
T: (212) 246-0900

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing was served upon all counsel of record via CM/ECF on the 21st day of October 2022.

*/s/ Jeffrey B. Pertnoy*
Jeffrey B. Pertnoy (FBN 91939)