## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:22-cv-81004-AMC

STEPHEN MUCCIO, individually and
on behalf of all others similarly situated,

         **CLASS ACTION**

    Plaintiff,

         **JURY TRIAL DEMANDED**

v.

GLOBAL MOTIVATION, INC., and
JORDAN R. BELFORT,

    Defendants.

_____/

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Stephen Muccio brings this class action against Defendants Global Motivation, Inc. ("**Global Motivation**") and Jordan R. Belfort ("**Belfort**") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2.      To promote Belfort's services, Global Motivation sent unsolicited text messages to those who had not provided their prior express written consent as required by the FTSA.  As the owner and CEO of Global Motivation, Belfort knowingly allowed the unsolicited text messages to be sent, including allowing messages that identified Belfort as the sender.

1

3.      Global Motivation also engages in telemarketing without the requisite policies and procedures and training required under the TCPA and its implementing regulations.

4.      The telephonic sales calls at issue caused Plaintiff and the Class members harm, including violations of their statutory rights, liquidated actual damages, annoyance, nuisance, and invasion of their privacy.

5.      Through this action, Plaintiff seeks an injunction and statutory damages on behalf of himself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendants.

## PARTIES

6.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Palm Beach County, Florida.

7.      Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he he was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

8.      Belfort is, and at all times relevant hereto was, a citizen and resident of Los Angeles County, Los Angeles.

9.      Global Motivation is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).  Global Motivation maintains its primary place of business and headquarters in Beverly Hills, California.

## JURISDICTION AND VENUE

10.      This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

11.     This Court has supplemental jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367.

12.     Defendants are subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendants' contacts with this state.  Defendants initiated and/or directed telemarketing and advertising text messages into Florida. Specifically, Defendants initiated and/or directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiff's cellular telephone number to sell goods, services or products in Florida.  Plaintiff's telephone number has an area code that specifically coincide with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

14.     Belfort is the owner and CEO of Global Motivation, a marketing company utilized by Belfort to market his brand, appearances, and speaking engagements.

15.     Commencing on or about November 28, 2020, Global Motivation sent and/or caused to be sent telephonic sales calls to Plaintiff's cellular telephone number, including the following text message calls:

Text Message
Nov 28, 2020, 12:27 PM

🔥🔥🔥 Hey, Jordan Belfort here! My ANNUAL BLACK FRIDAY THROUGH CYBER MONDAY SALE is officially on, and I'm inviting you to shop at my online store and get 70% OFF every item there! That's right -- 70% OFF!! 🔥🔥🔥 The savings are ridiculous!!!! Here's the link: http:// jordanbelfort.com/sale

Nov 30, 2020, 2:51 PM

Extended until MIDNIGHT: 70% off all my courses. Act now and be richer OR wait longer and pay full price. I want 2021 to be your best year EVER. https://jordanbelfort.com/sale

Jul 3, 2021, 6:00 PM

Ready to gain your personal independence this July 4th, Steve Muccio? Here's how:

https://jordanbelfort.com/sale

-JB Team

Sun, Jul 4, 5:32 PM

Happy Fourth from the JB Team!! Here's our special gift to you:

https:// jordanbelfort.com/sale

Mon, Jul 5, 2:01 PM

Surprise! Last minute sale extension! 70% off SITEWIDE, 24 hours only.

https:// jordanbelfort.com/sale

-JB Team

16.     The purpose of the telephonic sales calls was to solicit the sale of consumer goods and/or services.

17.     The text message solicitations sent to Plaintiff and the putative class members were sent for the benefit of and to generate revenue for Defendants.

18.     On information and belief, and given that he is  the owner and CEO of Global Motivation, Belfort knowingly allowed the text message solicitations sent to Plaintiff and the class members, including use of his name in the text messages.

19.     The precise details of Belfort's involvement are solely within the possession of Defendants.

20.     Given the use of generic text messages to solicit consumers, Plaintiff is informed and believes that Defendants caused similar telephonic sales calls to be sent to at least 100 individuals located in Florida.

21.     Plaintiff was in Florida when he received the above text message call, and Defendants' violative conduct occurred in substantial part in Florida.

22.     At the time Plaintiff received the text messages, he was the subscriber and sole user of the cellular telephone that received the messages.

23.     Plaintiff utilizes his cellular telephone for personal purposes and the number is Plaintiff's residential telephone line.

24.     On information and belief, Defendants maintain and/or have access to outbound transmission reports for all text messages sent advertising/promoting their services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

25.     As demonstrated by the text message screenshots above, Global Motivation did not provide Plaintiff and the class members with instructions on how to opt-out of future text messages by, for example, advising them that they could text "Stop" to get the messages to stop, which is a standard requirement outlined in the Principles and Best Practices manual published by CTIA, the trade association that represents every major wireless carrier in the country. *See* 190719-CTIA-

Messaging-Principles-and-Best-Practices-FINAL.pdf at 15 ("Message Senders should state in the message how and what words effect an opt-out. Standardized 'STOP' wording should be used for opt-out instructions, however opt-out requests with normal language (i.e., stop, end, unsubscribe, cancel, quit, 'please opt me out') should also be read and acted upon by a Message Sender except where a specific word can result in unintentional opt-out. The validity of a Consumer opt-out should not be impacted by any de minimis variances in the Consumer opt-out response, such as capitalization, punctuation, or any letter-case sensitivities.").

26.     Global Motivation's failure to provide opt-out instructions to Plaintiff and the Class members is indicative of its failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

27.     Also as demonstrated by the text message screenshots above, the text messages failed to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and/or (3) a telephone number or address at which Defendants may be contacted.

28.     To transmit the above telephonic sales text message calls Global Motivation utilized a computer software system that automatically selected and dialed Plaintiff's and the class members' telephone numbers.

29.     The impersonal and generic nature of the text messages, coupled with their frequency, demonstrates that Global Motivation utilized a computer software system that automatically selected and dialed Plaintiff's and the class members' telephone numbers.

30.     To send the text message, Defendants used a messaging platform (the "Platform"), which permitted Global Motivation to transmit thousands of text messages automatically and without any human involvement.

31.     Global Motivation was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Global Motivation opted to use the Platform to maximize the reach of their text message advertisements at a nominal cost to Global Motivation.

32.     The Platform has the capacity to select and dial numbers automatically from a list of numbers.

33.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

34.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

35.     Defendants would be able to conduct its business operations without sending automated text messages to consumers.

36.     Defendants would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

37.     Defendants would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

38.     Accordingly, it is not impossible for Defendants to comply with the FTSA in the context of transmitting text messages.

39.     The burden and cost to Defendants of securing consent from consumers that complies with the FTSA is nominal.

40.     Compliance with the FTSA will not result in Defendants having to cease its business operations.

41.     Compliance with the FTSA will not result in Defendants having the alter the prices of any goods or services it provides in the marketplace.

42.     Compliance with the FTSA will not force Defendants to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

43.     Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendants' compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

44.     Plaintiff never provided Defendants with express written consent authorizing Defendants to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

45.     More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection or dialing of telephone numbers.

46.     Global Motivation's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, (4) provide Plaintiff and the Class members with instructions on how to opt out of the text message solicitations, (5) identify the name of the caller, and (6) provide a number at which Global Motivation can be reached, caused Plaintiff and the Class members harm because they had no idea how to and were unable to stop the unsolicited text message calls.

47.     The unsolicited telephonic sales calls caused Plaintiff and the Class members harm, including liquidated actual damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

48.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes that Plaintiff seeks to represent are defined as:

> **IDNC Class**: **All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number.**

> **FTSA Class**: **All persons in Florida who, (1) were sent more than one telephonic sales call regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**

> **SELLER IDENTIFICATION CLASS**: **All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number, (4) that did not disclose the name of the individual caller, the name of the person or entity on whose behalf the call is being made, or a telephone number or address at which the person or entity may be contacted.**

49.     Defendants and their employees or agents are excluded from the Class.

### NUMEROSITY

50.     Upon information and belief, Defendants have placed telephonic sales calls to telephone numbers belonging to at least 100 consumers throughout Florida without their prior

express written consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

51.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

52.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (a) Whether Defendants initiated telephonic sales calls to Plaintiff and the Class members;
>
> (b) Whether Defendants can meet their burden of showing that they had prior express written consent to make such calls;
>
> (c) Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and
>
> (d) Whether Defendants are liable for damages, and the amount of such damages.

53.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendants dant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

54.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

<u>**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**</u>

55.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

<u>**SUPERIORITY**</u>

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

57.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF FLA. STAT. § 501.059 AGAINST GLOBAL MOTIVATION**
**(On Behalf of Plaintiff and the FTSA Class)**

58.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

59.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

60.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

61.     "Prior express written consent" means an agreement in writing that:

1.  Bears the signature of the called party;

2.  Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.  Includes a clear and conspicuous disclosure informing the called party that:

    a.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or

15

the playing of a recorded message when a connection is completed to a number called; and

b.  He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

62.     Defendants failed to secure prior express written consent from Plaintiff and the Class members.

63.     In violation of the FTSA, Global Motivation made telephonic sales calls to to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

64.     Global Motivation made the telephonic sales calls to Plaintiff and the Class members utilizing an automated system for the selection or dialing of telephone numbers.

65.     As a result of Global Motivation's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

66.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059 AGAINST BELFORT**
**(On Behalf of Plaintiff and the FTSA Class)**

67.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

68.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers

16

or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

69.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

70.     "Prior express written consent" means an agreement in writing that:

5.     Bears the signature of the called party;

6.     Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

7.     Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

8.     Includes a clear and conspicuous disclosure informing the called party that:

a.     By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

b.     He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

71.     Defendants failed to secure prior express written consent from Plaintiff and the Class members.

72.     In violation of the FTSA, Belfort knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

73.     Belfort knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

74.     As a result of Belfort's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

75.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(d)**
**AGAINST GLOBAL MOTIVATION**
**(On Behalf of Plaintiff and the IDNC Class)**

76.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

77.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

78.     Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

79.     Global Motivation violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

80.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $500.00 in statutory damages, for each text message sent by Global Motivation. To the extent Global Motivation's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the IDNC Class.

81. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**INJUNCTIVE RELIEF PURSUANT TO FLA. STAT. § 501.059(10)(a)**
**AGAINST GLOBAL MOTIVATION**
**(On Behalf of Plaintiff and the FTSA Class)**

82. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

83. Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Global Motivation's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Global Motivation's unsolicited calls and practices.

84. Global Motivation's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

85. Plaintiff and the FTSA Class members suffer irreparable harm if Global Motivation is permitted to continue its practice of violating the FTSA.

86. The injuries that the Plaintiff and the FTSA Class members will suffer if Global Motivation is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Global Motivation will suffer if it is enjoined from continuing this conduct.

87. The public interest will be served by an injunction prohibiting Global Motivation from continuing to engage in the unlawful practices described herein.

88. Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Global Motivation to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

89.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the

Prayer for Relief below.

**COUNT V**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(d)**
**AGAINST GLOBAL MOTIVATION**
**(On Behalf of Plaintiffs and the Seller Identification Class)**

90.     Plaintiff re-alleges and incorporate paragraphs 1-57 as if fully set forth herein.

91.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> **(4)** *Identification of sellers and telemarketers.* A person or entity
> making a call for telemarketing purposes must provide the called party
> with the name of the individual caller, the name of the person or entity
> on whose behalf the call is being made, and a telephone number or
> address at which the person or entity may be contacted. The telephone
> number provided may not be a 900 number or any other number for
> which charges exceed local or long distance transmission charges.

92.     Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are

applicable to any person or entity making telephone solicitations or telemarketing calls to wireless

telephone numbers.

93.     Global Motivation violated the requirements of section 64.1200(d)(4) by failing to

identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the

call was being made; and (3) a telephone number or address at which Global Motivation may be

contacted.

94.     Pursuant to section 227(c)(5) of the TCPA, Plaintiffs and the Seller Identification

Class members are entitled to an award of $500.00 in statutory damages, for each text message

sent by Global Motivation. To the extent Global Motivation's misconduct is determined to be

willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

statutory damages recoverable.

95.     Plaintiffs request for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)   An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c)   An order declaring that Defendants' actions, as set out above, violate the FTSA and TCPA;

d)   An injunction requiring Defendants to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e)   An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list.

f)   Such further and other relief as the Court deems necessary

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

DATED: November 3, 2022

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301