# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:22-cv-81004-AMC

STEPHEN MUCCIO, individually and
on behalf of all others similarly situated,                    **CLASS ACTION**

      Plaintiff,                                              **JURY TRIAL DEMANDED**

v.                                                              **REQUEST FOR HEARING**

GLOBAL MOTIVATION, INC., and
JORDAN R. BELFORT,

      Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

      Plaintiff Stephen Muccio responds in opposition to Defendants' Motion to Dismiss First Amended Complaint, [DE 25], and states:

### I.      INTRODUCTION

      Defendants fail to advance a single argument warranting denial of Plaintiff's and the Class members' day in court.

      <u>First</u>, Defendants' challenge to this Court's jurisdiction over Plaintiff's FTSA claims fails to consider that the Florida legislature identified text messaging as a type of conduct that it sought to curb through enactment of the statute. Accordingly, this Court should give deference to the legislature's findings and hold that the receipt of unwanted text messages is a harm sufficient to satisfy Article III. *See Gadelhak* v. *AT&T Services, Inc.*, 950 F. 3d 458, 463 (7th Cir. 2020) (Barrett, J.) ("A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.")) (emphasis original). Moreover, in relying on

1

*Salcedo v. Hanna*, 936 F.3d1162 (11th Cir. 2019), Defendants fail to consider that the FTSA identifies text messages while the TCPA does not and so the reasoning of *Salcedo* is inapplicable here. And even as it pertains to Plaintiff's TCPA claim, Defendants ignore that in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Supreme Court recently cited Justice Barrett's decision in *Gadelhak* as an example of an intangible harm sufficient for Article III standing, a case in which Justice Barrett rejected the reasoning and holding of *Salcedo*. 141 S. Ct. at 2204 (2021); *see also Chapman v. Nat'l Health Plans & Benefits Ag., LLC*, No. 22-10229, 2022 U.S. Dist. LEXIS 138916, at *12 (E.D. Mich. Aug. 4, 2022) ("And the Supreme Court specifically cited to *Gadelhak v. AT&T Services, Inc.*, a TCPA case where the Court found that '[t]he harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy.'….***So, if anything, the Supreme Court's guidance in this area supports a finding that the TCPA violations alleged in this case present a concrete harm***.'") (emphasis supplied). As discussed below, this Court should decline to follow recent non-binding authority to the contrary.

<u>Second</u>, in challenging Plaintiff's IDNC claims (Count III), Defendants give no consideration to Plaintiff's allegations that he and the Class members were harmed as a result of Defendant's failures to comply with the various requirements of the TCPA's implementing regulations in part because they were unable to stop Defendants' solicitations. This is precisely why Congress and the FCC require companies like Defendants engaged in telemarketing to comply with certain do-not-call requirements and procedures. Defendants' refusal to have the minimum procedures in place resulted in actual harm to Plaintiff and the Class members.

<u>Third</u>, Plaintiff has sufficiently alleged use by Defendants of an automated system to mass transmit text message solicitations. Defendants ignore Plaintiff's detailed allegations and claim that Plaintiff "parrot[s]" the language of the statute. Not so, and a review of Plaintiff's operative pleading

shows that Defendants' contention lacks merit. This Court should, consistent with prevailing authority, hold that Plaintiff's allegations are sufficient given that only Defendants know precisely the equipment they utilized to solicit Plaintiff and the Class members.

Lastly, while there might be a split of authority with respect to whether 47 C.F.R. § 64.1200(d) was promulgated under § 227(c), Eleventh Circuit precedent holds that a private right of action exists for violations of 64.1200(d). *See Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620 (N.D. Iowa Sep. 9, 2021) (evaluating split and ultimately holding that a private right exists) (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (discussing the promulgation of § 64.1200(d) and finding a private right of action under 47 U.S.C. § 227(c)(5)). Defendants' request for this Court to ignore binding authority and adopt the minority view on the issue should ignored.

## II.     ARGUMENT

### A.     This Court has Jurisdiction Over Plaintiff's FTSA Claims.

#### 1.     *Defendants Violated Plaintiff's and the Class Members' Legally Protected Interests Under the FTSA.*

Plaintiff has Article III standing to maintain his FTSA claims, and this Court therefore has jurisdiction, because he (1) suffered an injury in fact, (2) that is fairly traceable to Defendants' FTSA's violations, and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish that he suffered an injury in fact, Plaintiff must show that "[]he suffered '***an invasion of a legally protected interest***' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (emphasis supplied).

Plaintiff alleges that he received multiple text messages in violation of his legally protected interests conferred by the Florida legislature under the FTSA. Specifically, Plaintiff alleges that

Defendant's violations of the FTSA caused fundamental privacy violations that bear close relationships to traditional torts. *See* First Amd. Compl. ("FAC"), [DE 21], at ¶¶4, 47. And a plaintiff has standing where "the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.") (citing *Gadelhak*, 950 F. 3d at 463 (Barrett, J.) ("A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.")) (emphasis original). These allegations are sufficient to satisfy standing under Article III.

The Eleventh Circuit's decision in *Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) is instructive. *Perry*, which involved a violation of the Video Privacy Protection Act, noted that a violation of a consumer's rights under that statute "could constitute a concrete injury because it was analogous to torts that were well-established in American courts—namely, invasion of privacy and intrusion upon seclusion." *Id.* The Eleventh Circuit also discussed *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017), where it "reached a similar conclusion when we held that an agency's violation of the Fair Credit Reporting Act—offering an allegedly inaccurate statement in a plaintiff's credit report—was analogous to the longstanding tort for publication of defamatory material." *Id.* Thus, under Eleventh Circuit precedent, to demonstrate Article III standing in a case involving a violation of a statutory right, a plaintiff need only show "that the violation bears 'a 'close relationship' to a traditionally redressable harm.'" *Muransky*, 979 F.3d 931 (quoting *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016))).

4

Similarly, in *Cordoba v. DIRECTV, LLC*, a matter arising under the Telephone Consumer Protection Act, the Eleventh Circuit found that the plaintiff had demonstrated standing by virtue of receiving an unsolicited telephone call – and nothing more – because "Congress focused on precisely this kind of harm when it passed the TCPA….Congress identified telemarketing as a potentially 'intrusive invasion of privacy,' suggesting to us that Congress considered the receipt of an unwanted telemarketing call to be a real injury." 942 F.3d 1259, 1268 (11th Cir. 2019) (quoting Pub. L. No. 102-243, § 2, 105 Stat. 2394). Consistent with this framework, Judge Dimitrouleas held in *Moody v. Ascenda USA Inc.* that the violation of a consumer's privacy rights under Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, is "a concrete and particularized injury" sufficient to satisfy the strictures of Article III. No. 16-cv-60364-WPD, 2016 U.S. Dist. LEXIS 140712, at *14 (S.D. Fla. Oct. 5, 2016).

Here, in enacting the FTSA, the Florida legislature focused on precisely the type of harm Plaintiff complains of: companies/individuals like Defendants placing unwanted robotexts to consumers. Indeed, the Florida legislature made clear that it amended the FTSA to combat unwanted calls and texts that had resulted in 293,071 complaints from Florida consumers in 2020 alone. *See* Bill Analysis and Fiscal Impact Statement.[1] The Florida legislature noted how the Supreme Court's recent decision limiting the TCPA's ATDS definition rendered a portion of that statute "obsolete". *Id*. at 3. Accordingly, under the Article III inquiry framework of *Spokeo, Transunion, Muransky*, *Cordoba*, *Perry*, and *Pedro,* Plaintiff need not show an injury beyond the one that was identified by the Florida legislature in enacting the FTSA, which he has done thus satisfying the requirements of Article III.

### 2. **Salcedo** *does not Support Defendants' Position.*

Defendants' reliance on *Salcedo* is misplaced for several reasons. First, in determining that the receipt of a single text message was insufficient to confer Article III standing, *Salcedo* found that "[t]he

---

[1] www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.pre.rc.PDF

TCPA is completely silent on the subject of unsolicited text messages" and "[t]he judgment of Congress, then, provides little support for finding that Salcedo's allegations state a concrete injury in fact." *Salcedo*, 936 F.3d at 1170; *see also Weister v. Vantage Point AI, LLC*, No. 8:21-cv-1250-SDM-AEP, 2022 U.S. Dist. LEXIS 139642, at *9 (M.D. Fla. Aug. 3, 2022) ("*Salcedo* correctly reads *Spokeo* to require a consideration of Congress's contemporaneous judgment — not a consideration of an agency's judgment and not speculation about how Congress might judge the harm attending a new technology…. Absent a congressional statement about the harm of an unsolicited text message, *Salcedo* reviews generally the congressional findings underlying the TCPA and confirms that the TCPA principally endeavors to eliminate 'intrusive in-vasion[s] of privacy into the home.'").

Here, the opposite is true. The Florida legislature[2] specifically identified text messages in the FTSA with a specific intent: to curb abusive telemarketers from using automated systems to bombard consumers with text messages.[3] Accordingly, a violation of the rights protected under the FTSA (to be free from unwanted text messages) is a concrete injury in fact. *See Spokeo*, 578 U.S. at 330 ("[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.").

*Salcedo* thus supports Plaintiff's position, not Defendant's, because under the reasoning of that case this Court should conclude that standing is met solely by virtue of the legislature identifying text

---

[2] As observed by the Ninth Circuit, "state law can create interests that support standing in federal courts" and "[s]tate statutes constitute state law that can create such interests." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001). As the Ninth Circuit explained, state law must be able to support Article III standing, or else "there would not be Article III standing in most diversity cases, including run-of-the-mill contract and property disputes." *Id.*

[3] *See* Fla. Stat. Ann. § 501.059 at (j) ("Telephonic sales call" means a telephone call, **text message**, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.) (emphasis supplied).

messages in the statute and providing for protected legal rights from unwanted robotexts. *See Gadelhak*, 950 F. 3d at 462 ("While Congress cannot transform a non-injury into an injury on its say-so, that is hardly what it did here. Instead, Congress identified a modern relative of a harm with long common law roots. And Gadelhak claims to have suffered the very harm that the Act is designed to prevent.").

In their Motion, Defendants rely on *Frater v. Lend Smart Mortg., LLC*, Civil Action No. 22-22168-Civ, 2022 U.S. Dist. LEXIS 175183 (S.D. Fla. Sep. 27, 2022). In that case, the plaintiff argued that the holding of *Salcedo* is inapplicable to an FTSA claim because, as discussed above, the Eleventh Circuit concluded in *Salcedo* that it could not rely on the judgment of Congress to determine whether Congress had identified a modern relative of a harm with long common law roots as noted by Justice Barrett in *Gadelhak*. The court in *Frater* rejected the argument based on the Eleventh Circuit's finding in *Salcedo* that the plaintiff in that case "'facially appeare[ed] to state a cause of action under the TCPA' because the Federal Communications Commission had interpreted the TCPA to cover unauthorized text messages under the agency's rule-making authority." *Frater*, 2022 U.S. Dist. LEXIS 175183, *4 (quoting *Salcedo*, 936 F.3d at 1166). But in so concluding, the *Frater* court conflated the issues of constitutional and statutory standing.

Indeed, the Eleventh Circuit in *Salcedo*, in evaluating the issue of statutory standing, concluded that the plaintiff had stated a cause of action, but when it reached Article III standing, it reasoned that it could not rely on the judgment of Congress because the TCPA was silent on text messages when it was enacted. *See* 936 F.3d at 1169 ("The TCPA is completely silent on the subject of unsolicited text messages. Of course, text messaging in its current form did not exist in 1991 when the TCPA was enacted, but Congress has amended the statute several times since then without adding text messaging to the categories of restricted telemarketing. As we have mentioned, it is only through the rulemaking

authority of the FCC that the voice call provisions of the TCPA have been extended to text messages. At most, we could take Congress's silence as tacit approval of that agency action.").

The FTSA is not silent on text messages and so this Court can and, respectfully, should look to "the judgment of Congress" for guidance, particularly because "the concreteness of an alleged injury [under the FTSA] is difficult to recognize". *Id*. (quoting *Spokeo*, 136 S. Ct. at 1549). This is precisely what every other Circuit Court has done in concluding that Article III standing exists for TCPA text message violations. *See* Cranor *v. 5 Star Nutrition, L.L.C.,* 998 F.3d 686, 693 (5th Cir. 2021) ("In Congress's view, the only way to achieve that end was to completely ban certain types of calls, while permitting the FCC regulatory flexibility to allow others not at issue here. *Id*. ¶ 12. Cranor's asserted injury is thus exactly the one Congress sought to remediate in enacting the Act."); *Gadelhak*, 950 F.3d at 460 ("While Congress cannot transform a non-injury into an injury on its say-so, that is hardly what it did here. Instead, Congress identified a modern relative of a harm with long common law roots. And Gadelhak claims to have suffered the very harm that the Act is designed to prevent."); *Melito v. Experian Mtkg. Sols., Inc*., 923 F.3d 85, 92-93 (2d Cir. 2019) ("Because Plaintiffs have demonstrated a harm directly identified by Congress and of the same character as harms remediable by traditional causes of action, the district court correctly concluded that they 'need not allege any *additional* harm beyond the one Congress has identified.'") (citations omitted); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017) ("Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated. Unlike in *Spokeo*, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, *see id.* at 1550, the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.").

Second, Plaintiff submits that *Salcedo* has been called into question by recent Supreme Court precedent. Specifically, *Salcedo* was decided on August 28, 2019. On April 1, 2021, the Supreme Court issued its decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). At issue in *Duguid* were unsolicited text messages, which, like here, the plaintiff alleged violated the TCPA because they were sent using an "automatic telephone dialing system" ("ATDS") and without the requisite consent. *See id.* at 1168. In *Duguid,* the Supreme Court analyzed the merits question at issue of what type of equipment qualifies as an ATDS. *See id.* at 1165. Importantly, by reaching this substantive merits question, the Supreme Court—although implicitly—determined that it had jurisdiction under Article III, and that the plaintiff had standing, for text messages violations. *See Texas v. United State*s, 549 F. Supp. 3d 572, 594 n.23 (S.D. Tex. 2021) ("In a recent opinion, Justice Alito confirmed that the Supreme Court ***implicitly found standing by the fact that it had ruled on the merits*.")** (emphasis added) (citing *California v. Texas*, 141 S. Ct. 2104, 2124 n.2, 210 L. Ed. 2d 230 (Alito, J., dissenting) ("Although our opinion did not address the issue, ***we are required to consider Article III standing in every case that comes before us*.")** (emphasis added) (citing *Steel Co. v. Citizens for Better Environment*, 523 U. S. 83, 95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). In *Steel Co.*, the Supreme Court explained that,

> "***Without jurisdiction the court cannot proceed at all in any cause*.** Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L. Ed. 264 (1869). "On every writ of error or appeal, ***the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes*.** This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great Southern Fire Proof Hotel Co. v. Jones*, supra, 177 U.S. 449 at 453. ***The requirement that jurisdiction be established as a threshold matter "springs from the nature and limits of the judicial power of the United States" and is "inflexible and without exception*.**" *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 28 L. Ed. 462, 4 S. Ct. 510 (1884).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 1012 (1998) (emphasis added). This accords with the Eleventh Circuit's holding in *Drazen v. Pinto* that courts must "start with

the basic question of whether we have subject-matter jurisdiction in this case." 41 F.4th 1354 (11th Cir. 2022). Thus, when the Supreme Court analyzed the ATDS issue presented in *Duguid*, it necessarily first determined that the plaintiff had Article III standing by having received text messages alleged to have violated the TCPA.

Further, in *TransUnion LLC*, the Supreme Court cited Justice Barrett's decision in *Gadelhak* as an example of an intangible harm sufficient for Article III standing, a case in which Justice Barrett rejected the reasoning and holding of *Salcedo*. 141 S. Ct. at 2204 (2021) (citing *Gadelhak*, 950 F. at n. 1 ("The Eleventh Circuit maintains that Congress was concerned with the harm posed by unwanted telephone calls, not text messages. *Compare Salcedo*, 936 F.3d at 1172 (no standing in a TCPA suit over an unwanted text message), *with Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) (finding injury-in-fact in a TCPA suit alleging unwanted calls). We don't share the view that the two are 'categorically distinct.' *Salcedo*, 936 F.3d at 1172.")); *see also Chapman v. Nat'l Health Plans & Benefits Ag., LLC*, No. 22-10229, 2022 U.S. Dist. LEXIS 138916, at *12 (E.D. Mich. Aug. 4, 2022) ("And the Supreme Court specifically cited to *Gadelhak v. AT&T Services, Inc.*, a TCPA case where the Court found that '[t]he harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy.'....***So, if anything, the Supreme Court's guidance in this area supports a finding that the TCPA violations alleged in this case present a concrete harm***.") (emphasis supplied).

The court in *Frater* dismissed this argument because the Supreme Court did not discuss standing in *Duguid*, *see* 2022 U.S. Dist. LEXIS 175183, at *6, but as the Eleventh Circuit recently noted, no court can "check our Article III requirements at the door of the class action." *See Drazen v. Pinto*, 41 F.4th 1354, 1362 (11th Cir. 2022).[4] In other words, the fact that the Supreme Court did not discuss

---

[4] The court in *Frater* cited *Drazen* to support its conclusion that *Salcedo* remains good law, but the issue of text message standing under the TCPA (let alone under the FTSA) was not briefed by either party or even at issue in *Drazen*, and *Salcedo* was simply cited in passing.

standing in *Duguid* does not mean that it did not consider it before reaching the merits of the case. The recent focus by the Supreme Court on Article III standing further supports Plaintiff's argument that the Supreme Court does not ignore standing in any case.

Third, Defendants' reliance on *Salcedo* is misplaced because *Salcedo* held that the receipt of a *single* brief text message was insufficient to confer Article III standing under the TCPA because the single text message received by the plaintiff "is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face." *Salcedo*, 936 F.3d at 1172. Here, unlike *Salcedo*, Plaintiff alleges that Defendants sent him multiple text messages. FAC at ¶15. Plaintiff further alleges that Defendants' bombardment of his cellular telephone caused Plaintiff and the class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their privacy rights. FAC at ¶47. And as other courts have noted, "[a]lthough a single communication lack — by definition — a harassing or hounding quality, the receipt of fifteen voicemails yields a qualitative change from the 'fleeting' annoyance in *Salcedo* to conduct bearing a 'close relationship' to the hounding and harassment actionable at common law." *Weister v. Vantage Point AI, LLC*, No. 8:21-cv-1250-SDM-AEP, 2022 U.S. Dist. LEXIS 139642, at *11 (M.D. Fla. Aug. 3, 2022). Accordingly, Plaintiff's receipt of multiple violative messages, in conjunction with the alleged harms of statutory damages, annoyance, nuisance, and invasion of privacy, are sufficient to confer Article III standing.

Ultimately, this case is about Defendants' violation Plaintiff's and the class members' substantive rights under the FTSA, and this Court has jurisdiction to hear the claims. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) ("Since that harm is both particular to each person and imposes a concrete burden on his privacy, it is sufficient to confer standing."); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) (holding that receipt of a call followed by a voicemail is sufficient for Article III because "[w]hen one sues under a statute alleging 'the very injury [the statute]

is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded."); *Davis*, 497 F. Supp. 3d at 54-55 ("That harm bears a close relationship to the common law tort of inclusion upon seclusion….And it is a harm Congress sought to remedy in the TCPA."); *Duverger v. Rsch. Strategies, Inc.*, No. 21-CV-62465-RAR, 2022 U.S. Dist. LEXIS 57529, at \*2 (S.D. Fla. Mar. 29, 2022) ("Plaintiff sufficiently alleges an injury in fact sufficient to confer Article III standing" where "Plaintiff has alleged that she received an unsolicited phone call resulting in a pre-recorded voicemail message to her cell phone."); *Abramson v. Fed. Ins. Co.*, No. 8:19-cv-2523-T-60AAS, 2021 U.S. Dist. LEXIS 15172, at \*5 (M.D. Fla. Jan. 27, 2021) ("'[R]eceipt of a single unsolicited phone call... and a voicemail recording constitute[s] an injury in fact' for the purposes of standing.").

**B.  This Court has Jurisdiction Over Plaintiff's TCPA Claims**.

Plaintiff also has Article III standing to maintain his TCPA claims. Specifically, section 64.1200(d) of the TCPA requires Defendants to (1) maintain a written policy regarding an internal do-not-call list; (2) train its personnel in the use and existence of that list; (3) record and honor do-not-call requests, and maintain an internal do-not-call list; and (4) "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(1) – (4). Unlike section 64.1200(c), a cause of action under 64.1200(d) does not require a plaintiff to have first registered their number on the National Do-Not-Call registry or request to be placed on defendant's internal do-not-call list. "The TCPA makes it unlawful for any person to … initiate 'any call for telemarketing purposes to a residential telephone subscriber unless' the caller 'has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls[.]'" *Bumpus v. Realogy*

*Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650, at *20-21 (N.D. Cal. Mar. 23, 2022) (citing 47 U.S.C. § 227(c)(2); 47 C.F.R. § 64.1200(d)).

Plaintiff alleges that Defendants' failure to provide opt-out instructions in its text messages, as is the industry standard, demonstrates that Defendant does not have the requisite procedures under section 64.1200(d)(1)-(3). FAC at ¶¶25-26. Plaintiff further alleges, as evidenced by the text messages depicted in the Complaint, that Defendant failed to comply with the requirements of 64.1200(d)(4) "by failing to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and (3) a telephone number or address at which Defendant may be contacted." FAC at ¶27. Indeed, none of the messages that Defendants sent to Plaintiff identify Defendants' telephone number or address where they can be reached. *See* FAC at ¶15. And most importantly, Plaintiff alleges that Defendants' failure to comply with the TCPA caused him and the Class members actual harm, "including because they had no idea how to stop Defendants' unsolicited text message calls or who to contact to get the messages to stop." FAC at ¶46. The requirements of the TPCA that Defendants violated were enacted for this very reason, so that consumers like Plaintiff would be protected from messages they did not wish to receive by requiring companies to have procedures in place and advise consumers on how they can stop the harassment.

## C. Any Dismissal for Lack of Standing Should be Without Prejudice.

To the extent this Court finds lack of Article III standing—and thus a lack of jurisdiction—any resulting dismissal should be without prejudice. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot also be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render."). In other words, this Court should reject Defendants' request for dismissal with prejudice because when a court that finds it lacks jurisdiction to adjudicate the merits then it must dismiss the action without prejudice. *See*

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (pointing out that dismissals for lack of jurisdiction should always be without prejudice "because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims."); *Dimaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (dismissal for lack of standing "is necessarily without prejudice.").

And dismissal without prejudice is warranted particularly because Plaintiff intends to pursue his claims in state court where Article III does not apply. *See Turizo v. Healthfund Sols., LLC*, No. 21-cv-60289, 2021 U.S. Dist. LEXIS 92775 (S.D. Fla. May 14, 2021) ("The States 'are always free to adopt lower standing requirements than those imposed by Article III on federal courts.' *Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1225 n.1 (S.D. Fla. 2020) (Altman, J.). And, indeed, our state courts have done precisely that. So, for instance, Florida courts have imposed 'less restrictive' standing boundaries and have set a 'lower threshold for plaintiffs seeking redress for the injuries.' *Shedrick v. Kimbrell's of North Carolina, Inc.*, 2021 Fla. Cir. LEXIS 300, 2021 WL 1758968, at *4 (Fla. Cir. Ct. Apr. 19, 2021) (citing *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 116 (Fla. 2011))).

**D.  Plaintiff Sufficiently Alleges use of an Automated Platform to Mass Transmit Robotexts.**

In the face of lengthy allegations and screenshots of generic robotext messages, Defendants contend that Plaintiff has not sufficiently alleged Defendants' use of an automated system and that Plaintiff simply parrots the statute's definition. Defendants are mistaken.

Contrary to Defendants' contention, Plaintiff's operative pleading contains detailed factual allegations regarding the automated telephone equipment utilized by Defendant to spam Plaintiff and the putative class members, including the following allegations: (1) "To send the text messages, Defendant used a messaging platform (the 'Platform'), which permitted Defendant to transmit blasts of

text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform[]"; (2) "Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant[]"; (3) "The Platform has the capacity to select and dial numbers automatically from a list of numbers,"; (4) "The Platform has the capacity to schedule the time and date for future transmission of text messages,"; and (5) "The Platform also has an auto-reply function that results in the automatic transmission of text messages[]". FAC at ¶¶30-34; *see also* FAC at ¶¶28-29. Defendants attempt to undermine these allegations by claiming that they are the same as other cases filed, but text message platforms like the ones used by defendants in violation of the FTSA generally operate in the same manner, as so there is no reason for plaintiffs to alter the allegations.

Ultimately, reasonable inference to be drawn from these allegations is that Defendants sent the text messages at issue using an automated system for the selection or dialing of telephone numbers. Thus, Plaintiff adequately alleges Defendants' use of an automated system for the selection or dialing of telephone numbers, in violation of the FTSA. *See Wijesinha v. S. Fla. MGS, LLC*, 387 F. Supp. 3d 1412, 1415 (S.D. Fla. 2019) ("Federal courts have found 'the bare allegation a defendant used an ATDS sufficiently states a claim under the TCPA.'") (quoting *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV-ALTONAGA/Goodman, 2019 U.S. Dist. LEXIS 57136, at *14 (S.D. Fla. Apr. 3, 2019)).

 "And whether a system qualifies as an ATDS involves issues of fact that may be raised at summary judgment, after the opportunity to conduct discovery." *Id.* at *16 (citing *Hindi v. Apt-Ability LLC*, No. 18-63008-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 34124, at *3-4 (S.D. Fla. Mar. 4, 2019)); *see also Whitehead v. Ocwen Loan Servicing*, 2018 U.S. Dist. LEXIS 182386 (M.D. Fla. Oct.

24, 2018) ("Plaintiff alleges that Defendant called her using an ATDS which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (including but not limited to predictive dialer) or an artificial or prerecorded voice. This is sufficient at this stage. There is no way for Plaintiff to know the technological capabilities of the device(s) used to place the calls at issue in this case short of Plaintiff learning that information in discovery."). Moreover, facts which lie more within the knowledge of an adversary—like the automated system Defendants use to send its marketing text messages—may be averred generally. *Upfitters, L.L.C. v. Brooking*, No. 3:18-cv-496-J-34PDB, 2020 U.S. Dist. LEXIS 33571, at *19 (M.D. Fla. Feb. 27, 2020) ("Indeed, '[t]he *Twombly* plausibility standard, which applies to all civil actions, *see Iqbal*, 129 S. Ct. at 1953, does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant"); *Prosper v. Martin*, No. 17-20323-CIV, 2018 U.S. Dist. LEXIS 104910 (S.D. Fla. June 21, 2018) (same) (Altonaga, J.).

Lastly, Defendants' reliance on *Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-941-KKM-TGW, 2022 U.S. Dist. LEXIS 165475 (M.D. Fla. Sep. 13, 2022) is misplaced as that case is distinguishable. There, unlike here, the plaintiff's complaint consisted of a single allegation that did in fact parrot the language of the statute. *See id*. at *6 ("Instead, Davis alleges merely that '[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiffs and the Class members' telephone numbers.'"). The case is of little value to the analysis here because Plaintiff has done much more than simply parrot the statute. Accordingly, at this stage of the proceedings, Plaintiff has met her burden.

### E.  Plaintiff has a Private Right of Action Under 47 C.F.R. § 64.1200(d)

In *Cordoba*, the Eleventh Circuit held that a private right exists under 64.1200(d) because it was promulgated under section 228(c) of the statute:

The main FCC regulation at issue today provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber" without "institut[ing] procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id.* § 64.1200(d) (emphasis added). The FCC requires that telemarketers have a written policy for maintaining an internal do-not-call list, train their personnel on its "existence and use," put people on the list when they ask, and refrain from calling individuals on the list for five years after a request is made. *See id.* The TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of these regulations, and plaintiffs can recover $500 in statutory damages for each violation. *See* 47 U.S.C. § 227(c)(5).

And if any doubt remains, this Court should adopt the majority view on the issue. As the court

in *Fischman v. MediaStratX, LLC,* observed:

> After considering these divergent views, the court agrees with those courts holding that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. §227(c). The plain text of the procedures described in section 64.1200(d) corresponds with 47 U.S.C. § 227(c)'s requirements that the FCC promulgate rules to protect residential telephone subscribers' privacy rights. *See, e.g., Rosenberg*, 435 F. Supp. 3d at 324-25. Section 227(d)'s plain text, on the other hand, concerns standards governing "telephone facsimile machine[s,]" "automatic telephone dialing system[s,]" and other automated telemarketing devices. 47 U.S.C. § 227(d). Additionally, in contrast to the text of section 227(d), the text of 47 U.S.C. § 227(c) directs the FCC to, inter alia, "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id*. § 227(c)(1)(E). Thus, the text of 47 U.S.C. §§ 227(c)(1)(E) and(d) supports the conclusion that the FCC promulgated 47 C.F.R. § 64.1200(d) under 47 U.S.C. § 227(c)(1)(E), not section 227(d).
>
> As for the reasoning of the courts with contrary holdings, section 227(d)'s title indicates that it provides for "procedural standards," and the standards prescribed by 47 C.F.R. § 64.1200(d) are procedural. Nonetheless, "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Bail. & O. R. Co.*, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L. Ed. 1646 (1947); *United States v. Jordan*, 952 F.3d 160, 173-74(4th Cir. 2020); *United States v. Hatcher*, 560 F.3d 222, 226 (4th Cir. 2009). Additionally, even though the FCC stated in its 1992 report that it adopted one of 47 U.S.C. § 227(d)'s requirements in section 64.1200(d), this FCC statement is not determinative. After all, that statement only relates to one of 47 U.S.C. § 227's requirements that the FCC adopted in section 64.1200(d). Several of section 64.1200(d)'s other procedural standards, including those relevant in this case, directly relate to 47 U.S.C. § 227(c)'s plain text requiring the FCC to promulgate

rules protecting residential telephone subscribers' privacy rights, indicating that the FCC also adopted those requirements in section 64.1200(d). Compare 47 U.S.C. § 227(c) with 47 C.F.R. § 64.1200(d); *see Cunningham*, 251 F. Supp. 3d at 1200-01. Thus, the court holds that the FCC promulgated the relevant provisions of section 64.1200(d) under 47 U.S.C. § 227(c).

2021 U.S. Dist. LEXIS 149734, at *13-16 (E.D.N.C. Aug. 10, 2021).

Similarly, in *Rosenberg v. LoanDepot.com*, LLC, the district court explained:

A majority of courts that have addressed the issue (though not all including the Sixth Circuit, have held that 47 C.F.R. §64.1200(d)(4) was promulgated under the authority in § 227(c) and, therefore, contains a private right of action. See *Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011) (holding that the do not call provision, § 227(c), was implemented by §64.1200(d)(4)); *Cunningham v. Rapid Response Monitoring Servs., Inc*., 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017)(holding that "the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations."); Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014).

The Court agrees with the majority.  Overall, §64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights. The principal purpose of § 227(c) is to ensure that subscribers "avoid receiving telephone solicitations to which they object." The do-not-call provisions, including §64.1200(d)(4), further that goal and comport with the statute. The available record indicates that §64.1200(d) was promulgated under § 227(c) and contains a private right of action. Defendants' motion to dismiss on that ground will, therefore, be denied.

Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020); *see also Smith v. Truman Road Development, LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, 2020 WL 2044730, at *13-*14 (W.D. Mo. Apr. 28, 2020); *Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020); *Valdes v. Century 21 Real Estate, LLC*, No. CV 2:19-05411, 2019 U.S. Dist. LEXIS 182616, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) (citing 47 U.S.C. § 227(c)(5) as "establishing a private right of action for violations of 47 C.F.R. §§ 64.1200(c) and (d)."); *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-CV-00200-LB, 2016 U.S. Dist. LEXIS 52385, 2016 WL

1559717, at *6 (N.D. Cal. Apr. 18, 2016) ("47 C.F.R. § 64.1200(c) and (d) are regulations promulgated under § 227(c)").

Accordingly, this Court should ignore Defendants' request to not follow binding precedent and the majority view on the issue.

**F.  Plaintiff Withdraws Count IV, But Intends to Seek a Statutory Injunction as a Remedy.**

Lastly, Plaintiff concedes that statutory injunctive relief may not necessarily be a standalone count, but maintains that he is nevertheless entitled to pursue an injunction under the FTSA as a remedy. Accordingly, this Court should dismiss Count IV without prejudice, and without prejudice to Plaintiff's ability to pursue an injunction under the FTSA as a remedy.

**WHEREFORE**, Plaintiff Stephen Muccio respectfully requests an Order denying Defendants' Motion to Dismiss, and for such other relief deemed appropriate under the circumstances.

## REQUEST FOR HEARING

Plaintiff respectfully submits that this Court would benefit from oral argument on Defendants' Motion to Dismiss. Plaintiff estimates that the time required will be 40 minutes.

DATED: November 21, 2022

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713