UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:22-cv-81004-AMC

STEPHEN MUCCIO, individually and
on behalf of all others similarly situated,

    Plaintiff,

vs.

GLOBAL MOTIVATION, INC., and
JORDAN R. BELFORT,

    Defendants.
_____/

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants Global Motivation, Inc. ("**Global**") and Jordan R. Belfort ("**Mr. Belfort**") (collectively, "**Defendants**") hereby submit the following reply memorandum in further support of their motion to dismiss the putative First Amended Class Action Complaint (ECF No. 21; "**FAC**") filed by Plaintiff Stephen Muccio (the "**Motion**").

**I.      INTRODUCTION**

Defendants are entitled to dismissal of the FAC, and Plaintiff's opposition to Defendants' Motion does not provide a basis for the Court to find otherwise.

First, Plaintiff asks the Court to ignore binding precedent in this Circuit, look to case law outside of the Circuit, and disregard the fact that the exact intangible harm he claims to have suffered as a result of the subject messages have been deemed qualitatively insufficient to confer Article III standing. His allegations that he suffered "inconvenience, invasion of privacy, aggravation and annoyance" from receipt of text messages has been explicitly determined to *not*

state a concrete injury-in-fact by the Court of Appeals in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019). All of his claims must be dismissed accordingly.

Relatedly, Plaintiff's argument that the Court should, as part of its standing analysis, give determinative weight to the Florida Legislature's identification of text messages as a restricted form of communication in the statutory language of the FTSA disregards a basic precept of separation of powers principles espoused by the Supreme Court that a legislature "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). That the FTSA specifically references text messages where the TCPA does not is immaterial to the reality that Plaintiff's assertion of ephemeral intangible harms associated with his receipt of those text messages is insufficient to establish Article III standing in federal court.

Second, the Eleventh Circuit has also held that individuals who do not request to be placed on a seller's internal do-not-call list do not have standing to assert claims for alleged violations of the do-not-call provisions of 47 C.F.R. § 64.1200. *Cordoba v. DirectTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019). Plaintiff does not present any argument that this binding precedent does not otherwise bar his purported claims in Count III.

Third, Plaintiff's argument that a private right of action exists for claims asserting alleged violation of 47 C.F.R. § 64.1200(d)(4) does little but support the concession made in Defendants' Motion that some courts have found as such. This either ignores or misses the point of Defendants' argument, which is that because those decisions resulted either from a flawed or incorrect analysis of the regulation, statute and their history, or a naked substitution of that court's policy preferences, the assumptions made in those decisions warrant questioning and reexamination by this Court. Defendants' Motion demonstrated that the FCC expressly indicated that the identification

requirements of 47 C.F.R. § 64.1200(d)(4) were promulgated pursuant to authority conferred upon it by 47 U.S.C. § 227(d). Further analysis demonstrates that 47 C.F.R. § 64.1200(d)(4) is unique among the provisions of regulation 47 C.F.R. § 64.1200(d) insofar as it does not make any mention of a do-not-call list or do-not-call requests, lending credence to the notion that this particular provision was not intended to advance the TCPA's goal of protecting privacy interests by implementing company-specific do-not-call lists. It was enacted pursuant to a provision of the TCPA that does not afford a private right of action, and Plaintiff's claim seeking redress for a violation of it must be dismissed accordingly.

Finally, contrary to Plaintiff's opposition arguments, the FAC's allegations do not support an inference that an automated system was used to contact him in violation of the FTSA. The pleading is devoid of factual assertions demonstrating that the subject messages were sent by prohibited equipment rather than sent by fully compliant equipment, and warrant dismissal of the FTSA claims accordingly.

## II.   ARGUMENT

### a.   Plaintiff's Alleged Receipt of Text Messages Alone Is Insufficient to Confer Article III Standing

Presented with Defendants' demonstration that his manifest lack of standing under Eleventh Circuit jurisprudence warrants dismissal of the FAC, Plaintiff relies heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)[1], which he maintains renders *Salcedo*

---

[1] Plaintiff also asks the Court to infer that, by ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the Supreme Court was satisfied that receipt of text messages alone is sufficient to confer Article III standing. This argument can be easily disregarded as the plaintiff in *Duguid* explicitly alleged that he was charged for the incoming messages allegedly sent him, a harm qualitatively distinct than the ephemeral intangible harms alleged by Plaintiff which have been deemed insufficient by *Salcedo*. *See Duguid v. Facebook, Inc.*, 3:15-cv-985, ECF 1, p.7 ¶ 31. Incidentally, the same is true with respect to *TransUnion's* passing citation to *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), as the plaintiff there too had alleged that consumers are forced to

something less than good law and binding precedent despite having never been overruled. Nevertheless, the Eleventh Circuit's recent analysis in *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236 (11th Cir. 2022), of the impact of *TransUnion* on standing jurisprudence serves to reinforce the point that *Salcedo* continues to govern the analysis of standing in this case.

As noted in *Hunstein*, *TransUnion* illustrated that different facts can mean that some plaintiffs have standing while others do not, even under the same cause of action. *Hunstein* again relied upon the qualitative nature of the analysis underpinning the standing determination, not the quantitative nature of the conduct. *Hunstein,* 48 F.4th at 1249. This is in accord with *Salcedo*'s observation that the standing analysis focuses on the *qualitative* nature of the purported injury, not the *quantitative* number of messages received. *Salcedo,* 936 F.3d at 1169. Were an individual to have suffered a concrete injury from receipt of text messages, *Salcedo* would permit a finding of standing. Plaintiff has not alleged such a concrete injury, however.

In recognition that *Salcedo* is directly on point and dispositive of his TCPA claims, Plaintiff focuses much of his argument on why his FTSA claims should survive. As an initial matter, once the TCPA claims are appropriately dismissed in accordance with *Salcedo*, there is no persuasive basis for the Court to exercise jurisdiction over the state law claims.[2] Nonetheless, the FTSA claims also suffer from the same standing-based shortcomings as the TCPA claims. Plaintiff's

---

pay cell phone service providers for receipt of messages in addition to the intangible harms alleged. *See Gadelhak v. AT&T Services, Inc.*, 1:17-cv-1559 (N.D. Ill.), ECF 20, p. 3-4 ¶ 3.

[2] In must be noted that, notwithstanding Plaintiff's citation to Ninth Circuit authority of *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001), in support of his argument that the Court should give deference to the Florida Legislature's attempts to create interests to confer Article III standing because "state law must be able to support Article III standing, or else there would not be Article III standing in most diversity cases," Plaintiff does not seek to invoke the Court's diversity jurisdiction. Rather, despite amending his pleading after Defendants initially challenged his standing, Plaintiff again invoked the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, FAC ¶ 11, because he fundamentally maintains that receipt of text messages alone, without more, is sufficient to confer standing in this Circuit notwithstanding *Salcedo* holding otherwise.

4

primary argument for his standing to assert FTSA claims is that the Florida Legislature specifically identified text messaging as a proscribed form of communication where the TCPA is silent. In support of this, Plaintiff makes the remarkable argument that *Salcedo* supports his position, rather than Defendants' position.

Plaintiff is mistaken, however, for the simple reason that a statute's silence on, or identification of, proscribed conduct is not the end of the standing analysis, nor is it determinative of the analysis's conclusion. In fact, the Supreme Court in *TransUnion* cautioned that a legislature "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion*, 141 S. Ct. at 2205. For this reason, the Eleventh Circuit has stated that the Constitution "forbids the view that once Congress has spoken, the courts have no further role." *Hunstein,* 48 F.4th at 1243. The same applies to state legislatures.

Cases within this Circuit involving facsimile advertisements provide an instructive example of how legislative prohibition of certain conduct has been insufficient to confer standing where the intangible harms resulting from that conduct were not otherwise concrete injuries. Notwithstanding the fact that the TCPA contains many provisions restricting or prohibiting the transmission of facsimiles, courts in this Circuit have routinely concluded that receipt of a fax through an online fax service, in contrast to a standalone fax machine, is insufficient to confer standing without more. *See, e.g., M.D., P.A. v. Infucare RX LLC*, 2022 U.S. Dist. LEXIS 208452 (M.D. Fla. Nov. 16, 2022); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2021 U.S. Dist. LEXIS 245025 (M.D. Fla. Dec. 23, 2021). These courts, predictably, rely on the *qualitative* nature of an alleged injury to distinguish between faxes received online and faxes received on a standalone machine. As a result, even faxes which may have been transmitted in violation of the

statute, the receipt of which might imbue the recipient with a cause of action, do not necessarily result in the recipient having the necessary standing to prosecute that claim in federal court even where Congress has created that cause of action.

While Congress or the state legislature "is well positioned to identify tangible harms that meet minimum Article III requirements" and "may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law," *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), that does not mean that a plaintiff "automatically satisf[ies] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing still requires a concrete injury even in the context of a statutory violation." *Id*. Plaintiff's purported injuries, "inconvenience, invasion of privacy, aggravation and annoyance," *see* FAC ¶ 47, have been determined *not* to state a concrete injury-in-fact by courts in this Circuit. His claims must be dismissed accordingly.

  b. <u>**Plaintiff Does Not Have Standing to Assert IDNC Claims**</u>

Plaintiff argues that 47 C.F.R. § 64.1200(d) does not require a plaintiff to have first registered his/her number on the National Do-Not-Call registry or request to be placed on a defendant's internal-do-not-call list prior to asserting claims for alleged violation of the regulation. The sole authority to which Plaintiff cites in support of this conclusion is *Bumpus v. Realogy Brokerage Grp. LLC*, 2022 U.S. Dist. LEXIS 52650 (N.D. Cal. Mar. 23, 2022). Rather than rely on *Bumpus's* holding, however, Plaintiff simply quotes *Bumpus's* recitation of the language of 47 C.F.R. § 64.1200(d) itself. Plaintiff's lack of analysis of *Bumpus* speaks volumes, as it serves as an implicit admission of the clear distinction between *Bumpus* and Plaintiff's allegations.

In *Bumpus,* multiple named plaintiffs (but not all) affirmatively alleged that they had made a request not to receive additional calls. *See id.* 3:19-cv-03309, ECF No. 118 ¶¶ 131-132, 136, 158-160, 194, 203. Notably, however, the remaining named plaintiffs who did not allege having made such a do-not-call request did not purport to assert claims for alleged violations of 47 C.F.R. § 64.1200(d), in recognition of their own lack of standing.

This, of course, makes sense and is otherwise in perfect harmony with the Eleventh Circuit's finding in *Cordoba,* in which the Court of Appeals noted that there is "no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who never said . . . they didn't want to be called again." 942 F.3d at 1272. On the facts presented to it, *Cordoba* determined that, "if an individual not on the National Do Not Call Registry was called by Telecel and never asked Telecel not to call them again, it doesn't make any difference that Telecel hadn't maintained an internal do-not-call list. Telecel could and would have continued to call them even if it had meticulously followed the TCPA and the FCC regulations. For these individuals, then, their injury wouldn't be 'fairly traceable to the challenged action of the defendant.'" *Id.* (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). So too here. Plaintiff has not alleged (and cannot allege) that he ever requested to be placed on Defendants' internal do-not-call list. To the extent that he suffered any injury from his receipt of messages, that injury would not be fairly traceable to any alleged failure to maintain an internal do-not-call list.

To put a finer point on this, *Cordoba* explicitly stated that "[w]e hold today only . . . . (2) that recipients of [] calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list." *Cordoba*, 942

7

F.3d at 1276. That holding is binding precedent and mandates that Plaintiff's claims for violation of do-not-call regulations be dismissed with prejudice for lack of standing given the absence of any allegation that Plaintiff requested to be placed on an internal do-not-call list.

      c. **There Is No Private Right of Action for Alleged Violation of 47 C.F.R. § 64.1200(d)(4)**

Plaintiff relies heavily on *Cordoba* in support of his argument that a private right of action exists for claims alleging violation of Section 64.1200(d)(4). This reliance is misplaced, however, as is his reliance on cases whose reasoning in support of that conclusion is that the procedures of § 64.1200(d) fit neatly under the rubric of 47 U.S.C. § 227(c)'s mandate that the FCC adopt adequate do-not-call regulations. This misapprehends both the holding of *Cordoba* and the nature of Defendants' argument. Defendants do not take a position on whether a private right of action exists for alleged violations of subsections (1)-(3) and (5)-(6) of § 64.1200(d); rather, Defendants' position is that a private right of action does not exist for alleged violations of § 64.1200(d)(4) specifically, as that provision is unique among those of § 64.1200(d). In fact, the cases relied upon by Plaintiff tend to support this position.

Take *Fischman v. MediaStratX, LLC*, 2021 U.S. Dist. LEXIS 149734 (E.D.N.C. Aug. 10, 2021), for example, from which Plaintiff submits a lengthy block quote. *Fischman* underscores Defendants' argument that findings that a private right of action exists for alleged violations of § 64.1200(d)(4) have often resulted from flawed analyses, as *Fischman* incorrectly stated as fact that "[t]he FCC did not state under which subsection of 47 U.S.C. § 227 it promulgated 47 C.F.R.§ 64.1200(d)." *Id* at *12. This is definitively not true with respect to 47 C.F.R. § 64.1200(d)(4), as Defendants demonstrated that the FCC in its original 1992 rulemaking indicated that both original § 64.1200(d)(4) and original § 64.1200(e) (subsection (iv) of which contained identical language to current § 64.1200(d)(4)) were promulgated pursuant to the authority conferred on it by 47 U.S.C.

8

§ 227(d). *See* ECF No. 25 pp. 10-11, 13; *see also* 7 FCC Rcd. 8752, 8779 para. 53 (1992) ("The TCPA mandates that all artificial or prerecorded telephone messages delivered by an autodialer state clearly the identity of the caller at the beginning of the message and the caller's telephone number or address during or after the message, § 227(d)(3)(A), and we adopt this requirement in our rules, 64.1200(d)(4) . . . . Finally, as suggested by several commenters, we will require callers leaving a telephone number to provide a number other than that of the autodialer or prerecorded message player which placed the call because the autodialer or message player number may be in constant use and not available to receive calls from the called party. § 64.1200(e)(4)."). Contrary to *Fischman*'s conclusion, the FCC made explicitly clear the TCPA subsection under which it promulgated 47 C.F.R.§ 64.1200(d)(4), and that was Section 227(d).

*Rosenberg v. LoanDepot.com LLC* is also approvingly block quoted by Plaintiff, but there again a flawed analysis led to the conclusion that a private right of action exists. Specifically, *Rosenberg* broadly designated 47 C.F.R.§ 64.1200(d)(4) as a "do-not-call" provision, a mistake made by numerous courts despite the evidence to the contrary. In fact, what notably sets § 64.1200(d)(4) apart among the subparagraphs of § 64.1200(d) is that § 64.1200(d)(1)-(3),(5) and (6) all specifically reference in their language a do-not-call list or a do-not-call request. Section 64.1200(d)(4) pointedly does not. That it does not is no trivial matter, nor is it a surprise. It was originally enacted as a procedural standard in accordance with TCPA Section (d), as demonstrated above and in further detail in Defendants' Motion. Consequently, it is inappropriate to paint with such a broad brush to label all 47 C.F.R.§ 64.1200(d) subparts as do-not-call provisions. While the other subsections of 47 C.F.R. § 64.1200(d) reference do-not-call lists and/or requests, and thus arguably advance 47 U.S.C. § 227(c)(1)(A)'s stated goal to have the FCC enact rules after evaluating procedures to mandate "industry-based or company-specific 'do not call' systems," the

procedural standard mandated by the language of 47 C.F.R. § 64.1200(d)(4) serves a separate and distinct purpose, as demonstrated by the provision's silence on do-not-call lists/requests.

The FCC conclusively indicated when originally creating 47 C.F.R. § 64.1200(d)(4) and (e)(4) that those identification requirements were promulgated in accordance with 47 U.S.C. § 227(d). That they were promulgated pursuant to 47 U.S.C. § 227(d) mandates that the Court dismiss Plaintiff's claim for alleged violation of 47 C.F.R. § 64.1200(d)(4) with prejudice as no private right of action exists for such claim. Courts should play no role in substituting policy preferences when the Agency tasked with creation of the regulation made plain the statutory authority from which the rule derived.

### d. Plaintiff Has Not Pled that an Automated System Restricted by the FTSA Was Used

*Davis v. Coast Dental Services, LLC*, 2022 WL 4217141 (M.D. Fla. Sept. 13, 2022), recently identified several facts that could be pled by a plaintiff who otherwise has imperfect or incomplete information as to the capabilities of equipment purportedly used to dial him/her. Those include information from a seller's "website indicating that a message is sent through an automated system, information regarding the formality of the message, or information regarding the phone number from which the message was received" that might indicate an automated source. *Id.* at *5. Plaintiff did not plead any such facts, instead opting to recite the FTSA's statutory definition of an automated system. This is insufficient to survive Defendants' Motion and warrants dismissal of the FTSA claim accordingly.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion, dismiss the Amended Complaint, award Defendants fees and costs to the fullest extent permitted by law, and grant Defendants such further relief as the Court deems just and proper.

Dated: December 8, 2022                    **AKERMAN LLP**

/s/ *Bryan T. West*
Jeffrey B. Pertnoy, Esq. (FBN 91939)
Jeffrey.pertnoy@akerman.com
Lawrence P. Rochefort, Esq. (FBN 769053)
Lawrence.rochefort@akerman.com
Bryan T. West (FBN 83526)
bryan.west@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100 Miami,
Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095

- and –

**KLEIN MOYNIHAN TURCO LLP**

/s/ *Neil E. Asnen*
Neil E. Asnen, Esq. (Admitted Pro Hac Vice)
nasnen@kleinmoynihan.com
450 Seventh Avenue – 40th Floor
New York, NY 10123
T: (212) 246-0900

Attorneys for Defendants