UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-81004-CIV-CANNON/Reinhart

**STEPHEN MUCCIO**,

    Plaintiff,

v.

**GLOBAL MOTIVATION, INC.** and
**JORDAN R. BELFORT**,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion"), filed on November 14, 2022 [ECF No. 25].  The Court has reviewed the Motion, Plaintiff's Response in Opposition [ECF No. 27], Defendant's Reply [ECF No. 38], and the full record.  For the reasons set forth below, the Motion [ECF No. 25] is **GRANTED**, and the Complaint is **DISMISSED** for lack of Article III standing.

### RELEVANT BACKGROUND

The following facts are drawn from the First Amended Complaint ("FAC") [ECF No. 21] and accepted as true for purposes of this Order.

Beginning on November 28, 2020, Plaintiff received five unsolicited text messages from Defendant Global Motivation, two in November 2020 and three in July 2021 [ECF No. 21 ¶ 15; ECF No. 21 pp. 4–7].  Defendant Belfort, the CEO and owner of Defendant Global Motivation, knowingly allowed the text messages, which identified him as the sender, to be sent [ECF No. 21 ¶ 2].  Defendants used the text messages to "solicit the sale of consumer goods and/or services" and sent them for their own benefit and to generate revenue [ECF No. 21 ¶ 17].  Similar text messages were sent to at least 100 individuals located in Florida [ECF No. 21 ¶ 20].  The text

messages did not include instructions on how the recipient could opt-out of future messages [ECF No. 21 ¶ 25]. The messages also did not identify the name of the individual sender, the name of the legal entity on whose behalf the messages were sent, or a telephone number or address where Defendants could be reached [ECF No. 21 ¶ 27]. The text messages were sent using a computer software system that "automatically selected and dialed Plaintiff's and the class members' telephone numbers" [ECF No. 21 ¶ 28]. The Defendants' use of an automated system is clear from the "impersonal and generic nature of the text messages, coupled with their frequency" [ECF No. 21 ¶ 29]. Plaintiff never provided Defendants with his express written consent for the transmission of the text messages using such an automated system [ECF No. 21 ¶¶ 44–45]. Plaintiff and the putative class members suffered "harm, including liquidated actual damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights" as a result of their receipt of the unsolicited text messages from Defendants [ECF No. 21 ¶ 47].

On the basis of these allegations, Plaintiff filed a five-count class action complaint, asserting the following: (1) Defendant Global Motivation violated the Florida Telephone Solicitation Act (FTSA), Fla. Stat. § 501.059, by sending the text messages using an automated system without the prior express written consent of the recipient [ECF No. 21 ¶¶ 58–66] (Count I – Violation of FTSA Against Global Motivation); (2) Defendant Belfort violated the FTSA by knowingly allowing the text messages to be sent using an automated system without the prior express written consent of the recipient [ECF No. 21 ¶¶ 67–75] (Count II – Violation of FTSA Against Belfort); (3) Defendant Global Motivation violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and associated federal regulations by failing to maintain required written policies, failing to provide training to telemarketing personnel, and failing to maintain a standalone do-not-call list [ECF No. 21 ¶¶ 76–81] (Count III – Violations of the TCPA, 47 U.S.C.

§ 227(c), and 47 C.F.R. § 64.1200(d) Against Global Motivation); (4) Plaintiffs are entitled to injunctive relief pursuant to the FTSA, requiring Global Motivation to obtain prior express written consent before engaging in text message solicitations [ECF No. 21 ¶¶ 82–89] (Count 4 – Injunctive Relief Pursuant to the FTSA Against Global Motivation);[1] and (5) Defendant Global Motivation violated the TCPA and associated federal regulations by failing to identify in the text messages the name of the sender, the name of the legal entity on whose behalf the message was being sent, and a telephone number or address where Defendant could be reached [ECF No. 21 ¶¶ 90–95] (Count 5 – Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d) Against Global Motivation).

On November 14, 2022, Defendants filed the instant Motion, seeking dismissal for lack of Article III standing and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 25]. The Motion is ripe for adjudication [ECF Nos. 27, 38].

## LEGAL STANDARD

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they have suffered a concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021); *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1250 (11th Cir. 2022) (en banc). Importantly, a plaintiff does not automatically satisfy this requirement "whenever a statute grants [the plaintiff] a statutory right and purports to authorize [the plaintiff] to sue to vindicate that right." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016)). In other words, "Article III standing requires a concrete injury even in the context of a statutory violation," and "bare procedural violations, divorced from any concrete harm" do not

---

[1] In response to Defendants' argument that injunctive relief cannot be asserted as a standalone count [ECF No. 25 pp. 7–8], Plaintiff agrees to withdraw Count IV as a separate count but maintains the request for an injunction under the FTSA [ECF No. 27 p. 19].

suffice. *Spokeo*, 578 U.S. at 341; *see also Hunstein*, 48 F.4th at 1242 ("A 'bare statutory violation' is not enough, no matter how beneficial we may think the statute to be." (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 936 (11th Cir. 2020))). "To determine whether an intangible injury is sufficiently concrete, [courts] must look to both history and the judgment of Congress." *Trichell*, 964 F.3d at 997. "Central to [this determination] is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *TransUnion*, 141 S. Ct. at 2200 (citing *Spokeo*, 578 U.S. at 340–41); *see also Hunstein*, 48 F.4th at 1243 (explaining comparison of "new causes of action to old ones"); *id.* at 1244 ("We make the comparison between statutory causes of action and those arising under the common law with an eye toward evaluating commonalities between the harms.").

In the context of unwanted text messages specifically, the Eleventh Circuit ruled in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), a case alleging violations of the Telephone Consumer Protection Act of 1991 (TCPA), that the receipt of a single unsolicited text message does not qualify as an injury in fact under Article III. *Id.* at 1168. The Court rejected the notion that generalized allegations of wasted time or annoyance caused by isolated text messages amount to a constitutionally cognizable harm, adding: "Simply sending one text message to a private cell phone is not closely related to the severe kinds of actively intermeddling intrusions that the traditional tort [of intrusion upon seclusion] contemplates." *Id.* at 1171. *Salcedo* remains binding precedent in the Eleventh Circuit as illustrated by the recent decision in *Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022), which cited affirmatively to *Salcedo*'s holding that the receipt of a single unwanted text message is not sufficient to confer Article III standing. *Drazen*, 41 F.4th at 1360 (citing *Salcedo*, 936 F.3d at 1172) ("[A] plaintiff has not suffered a concrete injury for Article III

4

standing purposes when she has received a single unwanted text message.").[2]

## DISCUSSION

Using the framework set out in *Salcedo*, Plaintiff has failed to allege a concrete injury in fact to establish Article III standing. Plaintiff seeks redress on behalf of a putative class of Florida citizens for the "inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights" [ECF No. 21 ¶ 47]. That conclusory list of harms is the extent of the harm alleged in the FAC. There is no allegation of financial loss or other pecuniary harm. There is no suggestion that Plaintiff was unable to use his phone for other functions because of the unwanted messages, or that "his cell phone was searched, dispossessed, or seized for any length of time." *Salcedo*, 936 F.3d at 1172. And there is no allegation consistent with the degree of harm associated with the "highly offensive" or "objectively intense interference" as discussed in *Salcedo*. 936 F.3d at 1171. Instead, there is the allegation that Plaintiff received five unwanted text messages—two in November 2020 and three in July 2021 [ECF No. 21 pp. 4–7]—coupled with a bare statutory violation and generalized allegations of "inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights" [ECF No. 21 ¶ 47]. This is not enough to establish concrete harm under Article III and Eleventh Circuit precedent. *Id.*

Plaintiff attempts to distinguish his "injury" by observing that he received five unwanted text messages as opposed to the one unsolicited text message received by the plaintiff in *Salcedo* [ECF No. 27 p. 11 (citing ECF No. 21 ¶ 15)]. That factual distinction does not change the legal

---

[2] Plaintiff urges this Court to treat the standing analysis differently for his FTSA claims (Counts I and II) because the FTSA identifies unauthorized text messages in the statutory text, whereas the TCPA at issue in *Salcedo* does not [ECF No. 27 pp. 6–8]. The Court declines the invitation. Article III standing requires a concrete injury even in the context of a statutory violation; "'Congress may not simply enact an injury into existence [sufficient to satisfy Article III],'" *Hunstein*, 48 F.4th at 1243 (quoting *TransUnion*, 141 S. Ct. at 2205); and Plaintiff must assert a concrete harm, "independent of a new statutory cause of action," *id.* at 1245. The Court sees no basis to relax the requirements of Article III simply because certain counts in this case allege violations of the FTSA as opposed to the TCPA.

conclusion under Article III on the facts alleged. As the Eleventh Circuit in *Salcedo* made clear: "'There is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be.'" 936 F.2d at 1172–73 (quoting *Saladin v. City of Milledgeville*, 812 F.3d 687, 691 (11th Cir. 1987)). In other words, the question is how "concrete and real the alleged harm is," i.e., not on the mere number of unwanted communications. *Id.* Plaintiff also suggests that he has Article III standing because Defendants failed to maintain certain policies associated with unsolicited calls and also failed to train personnel in the use of a do-not-call list [ECF No. 27 pp. 12–13]. Those policy-oriented allegations do not tip the standing scale in favor of Plaintiff's standing; Plaintiff still must allege a concrete harm suffered as a result of receiving unsolicited messages from Defendants, and he has not—either in the receipt of the messages or in Defendants' alleged failure to maintain written policies.

Other courts in this district have applied the same analysis to situations nearly identical to the one here. *See Frater v. Lend Smart Mortg., LLC,* No. 22-22168, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022) (dismissing FTSA case for lack of Article III standing where plaintiff alleged that she received two unsolicited text messages); *Mittenthal v. Fla. Panthers Hockey Club, Ltd.,* 472 F. Supp. 3d 1211, 1225 (S.D. Fla. 2020) (finding that plaintiffs had not established Article III standing where they received approximately 30 text messages over a four-month period); *Eldridge v. Pet Supermarket Inc.,* 446 F. Supp. 3d 1063 (S.D. Fla. 2020), *appeal dismissed*, No. 20-11321, 2020 WL 3864935 (11th Cir. May 11, 2020) (dismissing TCPA case for lack of Article III standing where plaintiff received five unsolicited text messages over a three-month period). The Court reaches the same conclusion here.

While Defendants raise additional arguments regarding the plausibility of Plaintiff's claims under Rule 12(b)(6), "[s]tanding is a threshold jurisdiction question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d

964, 974 (11th Cir. 2005). As Plaintiff has not alleged concrete harm as required under Article III, the Court does not consider Defendants' Rule 12(b)(6) arguments.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 25] is **GRANTED**.

2. Plaintiff's First Amended Complaint [ECF No. 21] is **DISMISSED WITHOUT PREJUDICE**.[3]

3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 22nd day of December 2022.

                                                  AILEEN M. CANNON
                                                  UNITED STATES DISTRICT JUDGE

cc:    counsel of record

---

[3] Plaintiff requests a dismissal without prejudice so that he may pursue his claims in state court "where Article III does not apply" [ECF No. 27 p. 14]. He does not request leave to amend.